UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

**URBANA DIVISION**

| | |
|---|---|
| IN RE:                                 ) | |
|                                        ) | |
| SCOTT A.R. KOENEMAN and                ) | |
| NANCY LYNN KOENEMAN,                   ) | |
|                                        ) | |
|        Debtors.                        ) | Case No. 2:09-CV-02092 |
|                                        ) | |
| JEFFREY D. RICHARDSON,                 ) | |
| Chapter 7 Trustee,                     ) | |
|                                        ) | |
|        Appellant,                      ) | |
|                                        ) | |
|        vs.                             ) | |
|                                        ) | |
| SCOTT A.R. KOENEMAN and                ) | |
| NANCY LYNN KOENEMAN,                   ) | |
|                                        ) | |
|        Appellees.                      ) | |

## OPINION

This is an appeal from an Opinion and Order entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 08-91670) brought pursuant to 28 U.S.C. § 158(a).  After careful review of the arguments of both parties, this Bankruptcy Court's Order is REVERSED.

FACTS

On September 30, 2008, Scott A. R. Koeneman and Nancy Lynn Koeneman (the "Debtors") filed their Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code.  On November 3, 2008, the Trustee in bankruptcy, Jeffrey D. Richardson, filed a Motion for Turnover Order for $2,037.50 in wages earned by Mr. Koeneman, but not paid

to him prior to the bankruptcy filing. The Debtors submitted an amended Schedule C, Claim of Exemptions on December 4, 2008, claiming the wages earned by Mr. Koeneman prior to the bankruptcy filing to be exempt from the bankruptcy estate under two theories. First, the Debtors argued that because Mr. Koeneman was not entitled to and did not receive the paycheck for these wages until after the bankruptcy petition was filed, these funds were not a part of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541. Alternatively, the Debtors argued that the Illinois Wage Deduction Act ("IWDA"), which sets a limit of 15% on the amount of wages subject to garnishment by a judgment creditor, created a separate exemption allowing Mr. Koeneman to shield 85% of these unpaid wages from inclusion in the bankruptcy estate. 735 Ill. Comp. Stat. 5/12-803 (2008).

The Trustee filed an objection to the Debtors' amended claim of exemption on December 12, 2008, arguing that the wages earned by Scott A. R. Koeneman prior to the filing of the bankruptcy petition were property of the bankruptcy estate pursuant to 11 U.S.C. § 541, and that the IWDA did not create a general exemption allowing the Debtors to shield 85% of Mr. Koeneman's pre-petition wages.

On February 18, 2009, United States Bankruptcy Judge Gerald D. Fines issued a written opinion denying the Trustee's objection to the Debtors' Amended Claim of Exemption, and denying in part and allowing in part the Trustee's Motion for Turnover Order. In re Koeneman, 2009 WL 413082 (Bankr. C.D. Ill. 2009). The Bankruptcy Court rejected the debtor's argument that the wages were not a part of the bankruptcy estate, but held that the IWDA created a general exemption that allowed Mr. Koeneman to retain 85% of the pre-petition wages. Judge Fines relied on In re Meyer, a case in which IWDA was interpreted to create a general exemption that

could be applied in bankruptcy. In re Meyer, 388 B.R. 869 (Bankr. N.D. Ill. 2008). Judge Fines entered a separate written Order on February 18, 2009, directing the Debtors to turn over 15% of Mr. Koeneman's pre-petition wages to the Trustee.

On February 27, 2009, the Trustee filed a Notice of Appeal to this court.

ANALYSIS

A district court must uphold a bankruptcy court's findings of facts unless they are clearly erroneous, and legal conclusions are reviewed *de novo*. Matter of Excalibur Auto. Corp., 859 F.2d 454, 457 (7th Cir. 1988). This court concludes that the question of whether wages earned but not paid before the date of a bankruptcy filing are subject to a partial exemption from the bankruptcy estate is a question of law. Accordingly, this court's review is *de novo*.

After a bankruptcy petition is filed, nearly all the property of the debtor becomes part of the bankruptcy estate pursuant to 11 U.S.C. §541, including "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." See Matter of Yonikus, 996 F.2d 866, 869 (7th Cir. 1993). Debtors are then permitted to remove certain property from the bankruptcy estate, and the reach of creditors, by claiming it as exempt from execution under state or federal law. 11 U.S.C. § 522; See In re Thomson, 867 F.2d 416, 418 (7th Cir. 1982). The Illinois legislature has "opted out" of the federal exemption scheme, thus Illinois residents may only claim exemptions that are available under Illinois law, or under any federal law other than the list of exemptions provided in Section 522(d) of the Bankruptcy Code. See 735 Ill. Comp. Stat. 5/12-1201 (2008). The Debtors in this case have not claimed property as exempt pursuant to federal law.

The list of personal property exemptions expressly permitted under Illinois law has no

provision specifically addressing wages. See 735 Ill. Comp Stat. 5/12-1001 to -1006. Courts have established that wages, either paid or unpaid, may be protected under the "wild card" exemption that permits a debtor to remove from the bankruptcy estate "the debtor's equity interest, not to exceed $4,000 in value, in any other property." 735 Ill. Comp. Stat. 5/12-1001(b) (2008); See In re Keinath 102, B.R. 669, 702 (Bankr. C.D. Ill. 1986). The Debtors argue that personal property exemptions are not necessarily limited to those explicitly named in these sections. Several decisions have recognized exemptions created by other statutory provisions, thus the Debtors reliance on a section of the Illinois code not dealing explicitly with bankruptcy does not immediately preclude the debtors from attempting to establish an exemption under this statute. See In re Simpson, 115 B.R. 143 (Bankr. C.D. Ill. 1988) (recognizing a bankruptcy exemption established by a statute creating the Teachers Retirement System); see also In re McClure, 175 B.R. 21 (Bankr. N.D. Ill. 1994) (finding an exemption for benefits received under the Illinois Workers Compensation Act). However, as the Trustee argues in his reply brief, the fact that exemptions have been found to exist in statutes not explicitly dealing with bankruptcy does not lead to the conclusion that a statute should be liberally construed to *create* an exemption if no clear indication can be found that the legislature intended for the statute to serve such a purpose.

     In their brief, the Debtors urge the court to adopt the reasoning of Judge Wedoff in In re Mayer, 388 B.R. 869 (Bankr. N.D. Ill 2008). In that case Mayer filed chapter 7 bankruptcy and claimed 85% of "accounts receivable" due to him for his services as a psychologist as exempt from the bankruptcy estate pursuant to IWDA. Id at 871. The Bankruptcy Court held that the critical question in determining whether a statute created a general exemption applicable in

bankruptcy was not the placement or wording of the statute, but whether it protected an asset against all forms of collection. Judge Wedoff found that even though IWDA does not expressly protect against all forms of collection, the nature of unpaid wages as "choses in action immune from these common law methods of satisfying judgments makes the broader exemption language employed in other Illinois exemption provisions unnecessary." Id. at 872. Thus Judge Wedoff found that the overall effect of the IWDA was to protect a percentage of unpaid wages from all forms of collection, despite the lack of explicit language indicating a general exemption, and held that 85% of Mayer's earned but unpaid wages were exempt from the bankruptcy estate. Id at 874.

Alternatively, the Trustee urges this court to adopt the reasoning of Judge Perkins in In re Thum, 329 B.R. 848 (Bankr. C.D. Ill. 2005), a case involving nearly identical facts to the present case in which the court found that 85% percent of a performance bonus earned but not paid before the bankruptcy filing was not exempt from the bankruptcy estate. In Thum the Bankruptcy Court detailed the language employed by the Illinois legislature when creating a general exemption:

> "The Illinois personal property exemption statute expressly provides that the covered property 'is exempt from judgment, attachment, or distress from rent.' 735 ILCS 5/12-1001. Similarly, the provision exempting certain retirement plans states that such plans are 'exempt from judgment, attachment, execution, distress for rent, and seizure for satisfaction of debts.' 735 ILCS 5/12-1006. Likewise, the statute providing an exemption for workers' compensation awards quite forcefully states that no such award 'shall be

assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages.' 820 ILCS 305/21. Equally broad is the provision making certain life insurance proceeds 'exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured.' 215 ILCS 5/238(a). As well, the Illinois Homestead Exemption law makes a person's right in and title to a homestead 'exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes.' 735 ILCS 5/12-901. Thus, the Legislature has a demonstrable pattern, when creating an exemption, of using language that unequivocally protects the identified property against any and all debt collection mechanisms . . . . The import of the forgoing comparisons is that the Illinois Legislature knows how to make property exempt from the reach of creditors when it wants to."

In re Thum, 329 B.R. 848, 853-54 (Bankr. C.D. Ill. 2005) (footnote omitted).

In contrast, the IWDA only provides express protection for unpaid wages in the context of a deduction order and reads, in its entirety:

> "Wages subject to collection. The wages, salary, commissions and bonuses subject to collection <u>under a deduction order</u>, for any work week shall be the lesser of (1) 15% of such gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage prescribed by Section 206(a)(1) of Title 29 of the United States Code, as amended, or, under a wage deduction summons served

6

on or after January 1, 2006, the minimum hourly wage prescribed by Section 4 of the Minimum Wage Law, whichever is greater, in effect at the time the amounts are payable. This provision (and no other) applies irrespective of the place where the compensation was earned or payable and the State where the employee resides. No amounts required by law to be withheld may be taken from the amount collected by the creditor. The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

735 Ill. Comp. Stat. 5/12-803 (2008) (emphasis added).

The Debtors argue further that the citation notice requirements found in the code section entitled "Supplemental Proceedings" which include the wage exemptions found in the IWDA, and in particular a 2008 amendment to this section post-dating Judge Perkins decision in <u>Thum</u>, reinforce the legislature's intention to create a general exemption applicable to earned but unpaid wages. <u>See</u> 735 Ill. Comp. Stat. 5/2-1402 (2008). The Supplemental Proceedings provision describes in detail the purpose of the post-judgment proceeding, making no mention of any proceedings outside of the context of a collection judgment:

> "A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward

the payment of the amount due under the judgment."

735 Ill. Comp. Stat 5/2-1402 (2008). The citation notice requirements provide that the judgment debtor may then declare certain assets as exempt from the judgment, stating in relevant part:

> "The JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:
>
> . . .
>
> . . . (3) Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or, under a wage deduction summons served on or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater."

735 Ill. Comp. Stat 5/2-1402(b)(3) (2008).

The 2008 amendment to this section that the Debtors argue confirms the legislature's intent to create a general exemption provides that:

> "If the court determines that any property held by a third party respondent is wages pursuant to Section 12-801, the court shall proceed as if

8

a wage deduction proceeding had been filed and proceed to enter such necessary and proper orders as would have been entered in a wage deduction proceeding including but not limited to the granting of the statutory exemptions allowed by Section 12-803 and all other remedies allowed plaintiff and defendant pursuant to Part 8 of Article 12 of this Act."

735 Ill. Comp. Stat. 5/2-1402(k-5) (2008).

The Debtors argue that since the IWDA creates an exemption in unpaid wages, both in state collection proceedings and in the Supplemental Proceedings following a judgment, it also logically creates an exemption in Chapter 7 bankruptcy proceedings.

When a statute is unambiguous, the plain language of the statute serves as the best indication if its meaning. See Meredith v. Bowen, 833 F.2d 650 (7th Cir. 1987). Absent any contrary legislative intent, the plain language of a statute must be considered conclusive. See Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102 (1980).

A close examination of the language of the IWDA and its counterpart, the Supplemental Proceedings in section 1402, reveals no language implying that any of the provisions are meant to apply to any proceeding outside of the context of a collection judgment, and particularly nothing to suggest it may be applicable to federal bankruptcy proceedings where no collection order or citation has been issued. Furthermore, there is no legislative history supporting any contrary interpretation. The IWDA explicitly refers to its application in the context of a deduction order. The plain language of the citation notice requirements in section 1402 serve only as a limitation on the amount of wages a court can order to be turned over in the course of Supplemental Proceedings following a collection judgment. A logical inference of the purpose

behind the amended section k-5 is that it was included to reinforce the 15% limit on the amount of wages that a court can order to be turned over to a creditor in the absence of a wage deduction order. While both bankruptcy filings and collection judgments share some characteristics in that both are legal remedies to manage debt, the processes are not so similar that an exemption in one should automatically be applicable in the other without some clear indication that the legislature intended this effect. As the list of statutory exemptions outlined in Thum illustrates, the Illinois Legislature is quite capable of creating a general exemption when it chooses to and has not previously relied on implication to accomplish this, rather the Legislature has chosen to incorporate explicit language when a general exemption is intended.

The Trustee also argues that allowing the IWDA to create a general exemption applicable in bankruptcy would be at odds with the purpose of the statute, which he argues is to prevent debtors from having to file bankruptcy in the first place. This court agrees. The Trustee's argument in this case is supported by the Supreme Court's interpretation of a federal statute providing limitations on wage garnishment similar to those of the IWDA. In Kokoszka v. Belford, 417 U.S. 642 (1974), the Court rejected an argument that the federal limitations on wage garnishment provided by the Consumer Protection Act, similar to the IWDA, had an effect in a bankruptcy proceeding. The Court concluded that:

> "While [the Consumer Protection Act] was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. . . . Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of

bankruptcy in the first place by eliminating 'an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption and a consequent increase in personal bankruptcies. Noting that the evidence before the Committee 'clearly established a causal connection between harsh garnishment laws and high levels of personal bankruptcies, the House Report concluded:

> 'The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.' H.R.Rep.No.1040, 90th Cong., 1st Sess., 21 (1967).

In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act."

Kokoszka v. Belford, 417 U.S. 642, 650-51 (1974) (footnotes omitted) (citation omitted). In Thum, Judge Perkins reached a similar conclusion regarding the purpose of the IWDA:

> "The purpose of garnishment caps is to protect a wage earner living

paycheck to paycheck from losing his entire earnings so that he is left destitute with no ability to pay necessary family living expenses.  Presumably, by receiving 85% of his pay, he is at least able to pay the rent and put food on the table.  Once he deposits the wages into a bank account, however, the funds become fair game for creditors.  An insolvent person may not accumulate and shelter funds in a bank account simply because they derive from wages.  It is entirely rational that the Legislature would enact wage garnishment caps as a limited, non-bankruptcy protection for accrued wages while leaving the wild card exemption as the sole source of protection for paid wages."

Thum, 329 B.R. at 855.

To find that the additional wages earned but not paid are 85% exempt under the IWDA would be to create a loophole in the carefully drafted bankruptcy exemptions and allow debtors to shield any number of thousands of dollars from the bankruptcy estate simply by strategically filing their bankruptcy petition the day before a paycheck or year end bonus was due to be paid.

This court is unwilling to extend by inference the exemption created by the IWDA to be applicable outside of the context of wage deduction or collection judgments.  In this case, the Debtors had $4000 of "wild card" exemptions that could have been used to protect the wages in question, instead they chose to protect other assets, including a bank account containing $1600.00 cash, presumably also money from wages.  Chapter 7 bankruptcy has provided the Debtors with a fresh start, free from the reach of their previous creditors.  The bankruptcy estate lays no claim to any future wages earned by Mr. Koeneman past the date of the bankruptcy filing, however, the Debtors may not shield any assets held before the filing of their petition that

are not explicitly exempted by the Illinois Legislature from the bankruptcy estate by creative application of the IWDA. Therefore, the judgment of the Bankruptcy Court is REVERSED.

IT IS THEREFORE ORDERED:

(1) The judgment of the Bankruptcy Court is REVERSED.

(2) This case is remanded to the Bankruptcy Court with instructions to grant the Bankruptcy Trustee's Motion for Turnover in regards to the $2,037.50 of wages earned by Mr. Koeneman but not paid to him prior to the bankruptcy filing.

Reversed and remanded with instructions.

ENTERED this 29th day of July, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE